UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERYL B.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )  No. 1:20-cv-02025-JMS-TAB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration,[2] | ) |
| | ) |
| *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Sheryl B. filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") on August 18, 2017, alleging an onset date of August 23, 2015.  [Filing No. 11-3 at 3-4.]  Her applications were initially denied on October 12, 2017, [Filing No. 11-3 at 2; Filing No. 11-3 at 20], and upon reconsideration on January 16, 2018, [Filing No. 11-3 at 21; Filing No. 11-3 at 31.]  Administrative Law Judge ("ALJ") Elias Xenos conducted a hearing on June 13, 2019, [Filing No. 11-4 at 33], before issuing a decision on July 24, 2019 in which he concluded that Sheryl B. was not entitled to receive benefits. [Filing No. 11-2 at 9.]  The Appeals Council denied review on June 26, 2020.  [Filing

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

1

No. 11-2 at 2.] Sheryl B. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[3] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Sheryl B. was 43 years old on the alleged onset date.[4] [*See* Filing No. 11-2 at 14-15.] She completed some high school, but did not obtain a high school diploma or GED. [Filing No. 11-2 at 47.] She has previously worked as a butcher. [Filing No. 11-2 at 23.][5]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Sheryl B. was not disabled. [Filing No. 11-2 at 18.] Specifically, the ALJ found as follows:

- At Step One, Sheryl B. had not engaged in substantial gainful activity[6] since August 23, 2015, the alleged onset date. [Filing No. 11-2 at 14-15.]

- At Step Two, she has "the following severe impairments: COPD; asthma; chronic idiopathic urticarial (hives); febrile neutrophilic dermatosis (Sweet's Syndrome);

---

[4] The ALJ determined that Sheryl B. met the insured status requirements of the Social Security Act through December 31, 2020. [Filing No. 11-2 at 14.]

[5] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[6] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- ST elevation [myocardial infarction]; unstable angina; polymorphic ventricular tachycardia; pulmonary hypertension; and vasculitis." [Filing No. 11-2 at 15.] Additionally, she has mild limitations with "interacting with others" and with regard to "concentrating, persisting, or maintaining pace". [Filing No. 11-2 at 14-15.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 17.]

- After Step Three but before Step Four, Sheryl B. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can frequently reach in all directions bilaterally, except she can never reach overhead bilaterally; [she] can never work around unprotected heights or hazardous machinery; [she] can never have concentrated exposure to extreme cold, extreme heat, wetness, humidity, toxic or caustic chemicals, or respiratory irritants such as fumes, odors, dust, gases, or poorly ventilated areas; [she] can never work outdoors in bright sunshine; due to cardiovascular deficits, [she] is limited to low-stress jobs, defined as having no fast-paced production requirements, no exposure to hazardous conditions, and few, if any, workplace changes; [she] must be permitted to stand for 2 to 3 minutes after sitting continuously for 2 hours throughout the workday; and [she] is limited to work involving only simple, routine tasks, in a work environment free of fast-paced production requirements, involving only simple, work-related decisions with few, if any, work-place changes." [Filing No. 11-2 at 18-19.]

- At Step Four, Sheryl B. is unable to perform any past relevant work, including past relevant work as a butcher. [Filing No. 11-2 at 23.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Sheryl B.'s age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed in representative occupations such as an addresser, table worker, and document preparer (microfilming). [Filing No. 11-2 at 23-24.]

## III.
### DISCUSSION

Sheryl B. argues that the ALJ: (1) failed to account for Sheryl B.'s mild limitation in interacting with others in the RFC assessment; (2) decided Sheryl B.'s RFC without obtaining a physician's opinion despite finding that she had several severe impairments; (3) failed to fully and fairly develop the record; and (4) failed to address the amount of time that Sheryl B. would be off

5

task in light of the VE's testimony that she could not sustain any kind of job if she would be off task for more than 10 percent of the workday. [Filing No. 13 at 2.] Because the Court has determined that the first and fourth issues require remand, it will address those issues first.

### A. Sheryl B.'s RFC and the ALJ's Hypotheticals to the VE

Sheryl B. argues that despite finding that she has a "mild limitation in interacting with others," the ALJ failed to include any "social-functioning limitations" in his hypothetical questions to the VE or in the RFC. [Filing No. 13 at 14, 16-17.] Sheryl B. emphasizes that although the ALJ stated at the hearing that he intended to ask her about her "psychological problems," he ended his questioning before addressing those issues. [Filing No. 13 at 17 (citing Filing No. 11-2 at 55.] She argues that when "the entire finding of disability or no disability hinges on the validity of the ALJ's hypothetical question [to the VE], and the hypothetical questions are fundamentally flawed because they do not include all of the limitations supported by medical evidence in the record, 'the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand.'" [Filing No. 13 at 18 (quoting *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004)).]

In response, the Commissioner argues that the ALJ's evaluation of Sheryl B.'s mild limitation in interacting with others is supported by substantial evidence in the record. [Filing No. 14 at 9.] The Commissioner argues that "[d]espite finding [Sheryl B.] had no severe mental impairment, the ALJ nonetheless generously accommodated her disability claim by adopting extensive mental limitations in the subsequent RFC finding," including limitations to low-stress jobs, no fast-paced production requirements, no exposure to hazardous conditions, and few, if any, workplace changes. [Filing No. 14 at 12 (citing Filing No. 11-2 at 17).] The Commissioner further argues that "the ALJ's extensive discussion of the evidence supporting no more than [a] mild limitation in social functioning . . . supports and explains the ALJ's exclusion of a specific social

6

limitation in the RFC finding." [Filing No. 14 at 13.] The Commissioner contends that even if Sheryl B. could establish an error in the RFC determination, she cannot and has not identified any harmful error arising from the ALJ's exclusion of any additional social limitations. [Filing No. 14 at 13.]

Sheryl B. replies that, while she agrees with the Commissioner that substantial evidence supports the ALJ's finding that she has a mild limitation in interacting with others, the issue is not whether she has that limitation, but instead whether the ALJ accounted for that limitation in his RFC determination or his questions to the VE. [Filing No. 15 at 3.] Sheryl B. argues that the ALJ failed to do so, and that the Commissioner failed to address that point in its response. [Filing No. 15 at 3.]

   1.   *The ALJ's Residual Functional Capacity Assessment*

The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or her friends and family. *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8P at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

In this case, when the ALJ undertook the Step Two analysis of Sheryl B.'s impairments, he found that Sheryl B. has a mild limitation in interacting with others. [Filing No. 11-2 at 14.] When determining her RFC, the ALJ did not consider this specific mild limitation despite addressing other mild "mental impairments," such as "bouts of confusion, fogginess and a lack of concentration." [Filing No. 11-2 at 18-19.]  This was improper. *See Varga,* 794 F.3d at 813; *see also,* SSR 85-15 (S.S.A. 1985) ("Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment.").

While the Commissioner argues that the ALJ's Step Three discussion of the severity of Sheryl B.'s social functioning limitation "supports and explains" the exclusion of this limitation in the RFC when a claimant has at least one severe impairment (as Sheryl B does), the claimant is entitled to have the ALJ evaluate whether the combination of both non-severe and severe impairments impose any functional limitations. *See Bowen v. Yuckert,* 482 U.S. 137, 150 (1987); *Johnson v. Sullivan,* 922 F.2d 346, 351 (7th Cir. 1990).  Simply put, when mental impairments are non-severe, they still must be evaluated for purposes of Steps Four and Five.

Similarly, the ALJ's inclusion of generalized "mental limitations" in the RFC finding, such as "low-stress jobs," "no fast-paced production requirements," and "few, if any, workplace changes," fails to build a logical bridge between the ALJ's finding of a mild limitation in interacting with others and the conclusion contained in the RFC. [Filing No. 14 at 12 (citing Filing No. 11-2 at 17).]  The Seventh Circuit has recognized that while there are no "magic words" that an ALJ must use, the ALJ must rationally articulate the grounds for his decision so that courts may afford the claimant meaningful review of the ALJ's ultimate findings.  *See Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir.2002).  In the present case, the ALJ recognized three separate mild limitations as part of the Step Three analysis (interacting with others; concentrating, persisting or maintain

pace; and adapting or managing oneself), [Filing No. 11-2 at 14-15], but did not address what impact, if any, Sheryl B.'s mild limitation in interacting with others had on her residual functional capacity. [Filing No. 11-2 at 17-21.] The Court takes note that while the RFC refers to some of the underlying evidence supporting Sheryl B.'s mild limitation interacting with others (a "Third Party Function Report [prepared by Sheryl B.'s fiancé] containing allegations and statements similar to the claimant's own"), the RFC does not discuss the limitation in question. [Filing No. 11-2 at 19.]

The Court finds that the ALJ must make a specific assessment about Sheryl B.'s mental impairments in determining an appropriate RFC. Neither the finding that her limitations are non-severe nor the adoption of generalized mental limitations justifies the absence of any consideration of the potential for functional limitations. Perhaps the ALJ will not find any, but the ALJ must build a logical bridge from the evidence to the conclusions reached in the RFC. The Court is convinced that the ALJ's decision lacks such an assessment.

   *2.     The ALJ's Hypothetical Questions to the VE*

The Seventh Circuit has held that the ALJ must "provide VEs with a complete picture of a claimant's residual functional capacity" when posing hypothetical questions to the VE. *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) ("[I]f the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations . . . We require the VE to know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking"). If an ALJ fails to include all of this information, then the VE's hypothetical and the assessment are insufficient unless: (1) the VE independently viewed the claimant's medical records or heard testimony regarding the limitations in question; or (2) the ALJ phrased the

9

hypothetical in such a way that "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619-20 (7th Cir. 2010). If the ALJ did not incorporate all limitations supported by medical records in the hypothetical posed to the VE and did not use those limitations in determining the claimant's RFC, then remand is required. *Id.* at 621.

When he questioned the VE, the ALJ did not include any conditions about her mild limitation in interacting with others in the hypothetical questions. [Filing No. 11-2 at 56-65.] This was also improper. *See Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record"). Neither of the exceptions to the general rule are applicable in this case. There is no evidence in the record to suggest that the VE examined Sheryl B.'s medical records. In fact, the ALJ affirmatively stated that the VE was "not familiar with [Sheryl B.'s] medical records." [Filing No. 11-2 at 62]. Further the VE did not hear testimony regarding the limitation in question. During the hearing, the ALJ indicated that he intended to discuss Sheryl B.'s psychological limitations, stating "we're going to talk about that in a moment." [Filing No. 11-2 at 55.] However, he ended his questioning prior to discussing the limitation at issue. [Filing No. 11-2 at 55-65.] Likewise, it was not "manifest" in the ALJ's questioning that the underlying limitation was included implicitly in the questioning. While the ALJ did inquire about "work limited to simple routine tasks in a work environment free of fast pace production requirements, involving only simple work-related decisions, with few if any workplace changes," [Filing No. 11-2 at 60-61], he did not inquire regarding Sheryl B.'s occupational base given her social functioning limitations and irritability.

Because the ALJ failed to account for or discuss Sheryl B.'s mild limitation in interacting with others in his assessment of her RFC, and since he did not include this limitation in his hypotheticals to the VE, the Court must remand this case for further consideration.

### B.  The Amount of "Off Task" Time Permitted in Sheryl B.'s Approved Occupations

Sheryl B. argues that the ALJ failed to address whether she would be able to stay on-task for at least 90 percent of the workday in light of the VE's testimony that most employers would tolerate a maximum 10 percent off task time in the jobs available to her.  [Filing No. 13 at 28.]  Sheryl B. contends that the facts of this case are similar to the facts of *Lothridge v. Saul*, 984 F.3d 1227, 1228 (7th Cir. 2021).  [Filing No. 13 at 28.]  In *Lothridge*, Sheryl B. argues, the claimant had limitations in concentration, persistence, and pace, and as in this case, the VE testified that the relevant jobs "required the ability to stay on-task for at least 90 percent of the workday."  [Filing No. 13 at 31.]  Sheryl B. notes that in *Lothridge*, "[b]ecause the ALJ neither cited evidence that [the claimant] could meet the 90 percent benchmark nor addressed the evidence that she could not, the Court vacated the district court's judgment affirming the denial of benefits and remanded the case to the Commissioner for further proceedings."  [Filing No. 13 at 31 (internal citations omitted).]  Sheryl B. argues that the ALJ neglected to ask her about her mental and psychological symptoms and impairments. [Filing No. 13 at 31.]  Moreover, she argues, like the ALJ in *Lothridge*, the ALJ in this case "did not address whether [Sheryl B.] would be able to stay on-task for at least 90 percent of the workday, day after day, week after week," and that the Court should remand this case as the Seventh Circuit did in *Lothridge*.  [Filing No. 13 at 32.]

The Commissioner argues that Sheryl B.'s reliance of *Lothridge* is misplaced.  [Filing No. 14 at 14.]  The Commissioner contends that in *Lothridge*, "the Court held the RFC failed to account for Plaintiff's *moderate* limitations in concentration, persistence, and pace," whereas the ALJ in

11

this case found only a mild limitation in concentration, persistence, or pace. [Filing No. 14 at 14 (emphasis in original).] The Commissioner further emphasizes that the VE "only testified *at the ALJ's prompting* that the cutoff for off-task time with most employers would be around ten percent. [Filing No. 14 at 15 (emphasis in original).] Accordingly, the Commissioner argues, the ALJ "was not required to include that limitation in the RFC finding, as he did not find it supported." [Filing No. 14 at 15.]

Sheryl B. replies that the *Lothridge* court's reasoning "did not depend on whether the claimant's limitations were mild or moderate." [Filing No. 15 at 9.] She contends that in this case, "as in *Lothridge*, the ALJ neither cited evidence that [she] could meet that [90 percent] benchmark nor addressed the evidence that she could not." [Filing No. 15 at 9.]

The Court agrees that the ALJ's decision does not adequately address the VE's testimony that Sheryl B. would need to stay on-task at least 90 percent of the time for her to hold the positions identified by the ALJ. As discussed above, the Seventh Circuit has recognized that the RFC analysis must articulate an "accurate and logical bridge between the evidence and the conclusion." *Peeters*, 975 F.3d at 641 (internal citations omitted). This analysis must include a combination of both non-severe and severe impairments. *Bowen*, 482 U.S. at 151 (internal citations omitted). The ALJ "may not dismiss a line of evidence contrary to the ruling." *Villano,* 556 F.3d at 563.

While the Commissioner argues that "[t]he ALJ was not required to include [an off-task time] limitation in the RFC finding, as he did not find it supported," [Filing No. 14 at 15], the ALJ was nevertheless required to clearly articulate his analysis in the RFC based on all relevant evidence in the record. *Martin v. Saul,* 950 F.3d 369, 374 (7th Cir. 2020) ("[T]he ALJ must account for the totality of a claimant's limitations in determining the proper RFC.") (internal citations omitted). As discussed above, the ALJ's analysis must include a combination of both non-severe

and severe impairments. *Bowen*, 482 U.S. at 151 (internal citations omitted). As the Seventh Circuit observed, a person like Sheryl B. with problems concentrating "might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Martin,* 950 F.3d at 374. Observing that a person has the capacity to perform simple and repetitive tasks "says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul* 932 F.3d 567, 570 (7th Cir. 2019). Much like in *Lothridge,* here the ALJ made no determination one way or another whether Sheryl B. is "capable of meeting these requirements with her deficits in concentration, persistence, and pace." *Lothridge*, 984 F.3d at 1233.

The Court is equally unpersuaded by the Commissioner's argument that the ALJ in this case is relieved from accessing the VE's testimony because the ALJ solicited the testimony - as compared to the testimony in *Lothridge,* which was volunteered without prompting from the ALJ. The Seventh Circuit's analysis in *Lothridge* turns on whether the ALJ addressed the VE's testimony – not whether the VE volunteered her testimony. *Lothridge*, 984 F.3d at 1233. Here, as in *Lothridge*, the ALJ was obligated to consider the VE's testimony. *Id.* at 1235. From his decision, the Court is unable to ascertain whether he did. *Id.*

In failing to articulate a clear finding regarding Sheryl B.'s capacity to stay on-task in light of the VE's testimony, the ALJ did notconstruct a logical bridge between the evidence and his RFC determination. In light of this error, the Court must remand this case for further consideration. *Lothridge*, 984 F.3d at 1235.

### C. Additional Issues

Sheryl B. raises two additional issues: (1) whether the ALJ decided Sheryl B.'s RFC without obtaining a physician's opinion despite finding that she had several severe impairments,

13

[Filing No. 13 at 17-21]; and (2) whether the ALJ failed to fully and fairly develop the record, [Filing No. 13 at 21].  The Court need not resolve these issues because it finds that the issues discussed above are dispositive.  Nevertheless, on remand, the ALJ should take care to fulfill his obligation to build a logical bridge from the evidence to the conclusion and to avoid relying on lay opinions to fill evidentiary gaps in the record where medical opinions are necessary.  *See, e.g., Blakes ex rel. Wolfe v. Barnhart,* 331 F.3d 565, 570 (7th Cir. 2003).

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Sheryl B. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c) as detailed above.  Final Judgment shall enter accordingly.

August 30, 2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**